UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONAGRA TRADE GROUP, INC. | CIVIL ACTION |
| VERSUS | NO. 07-2222 |
| AEP MEMCO, LLC | SECTION "L" (3) |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

### I. PROCEDURAL HISTORY

This case involves a claim for damages resulting from the loss of a cargo of wheat aboard barge DE8229 which sunk in Hurricane Katrina on August 29, 2005. The Plaintiff, ConAgra Trade Group, Inc. ("ConAgra") entered into a Freight Contract with the Defendant, AEP MEMCO, LLC ("MEMCO") for the transportation of wheat from Kentucky to Louisiana. MEMCO delivered the barge and wheat in Louisiana in good condition and the barge with the wheat was placed in a fleeting facility to await a berth at the discharge wharf. On August 29, 2005, Hurricane Katrina struck Louisiana and sunk the barge.

ConAgra has sued MEMCO to recover the value of the lost wheat plus prejudgment interest. According to ConAgra, MEMCO breached its contract since it assumed liability for cargo safety aboard its barge pursuant to the freight contract. ConAgra further maintains that MEMCO breached the freight contract due to its refusal to pay for the lost cargo and because it did not have cargo insurance. In response, MEMCO claims that it should not bear the loss because the barge was constructively delivered to its destination, which, by agreement of the parties, placed the risk of loss upon ConAgra. MEMCO also argues that the loss of the barge and cargo was due to an Act of God. Finally, MEMCO asserts that it is not liable because at the time of the loss the barge was in the care custody and control of a third party. MEMCO has

asserted third-party claims against the terminal management in the event that it is found to be liable for the loss of the barge or its contents, but the parties have agreed to the third-party claims and place only the underlying action before the Court.

Before the scheduled non-jury trial, the parties agreed to submit this matter on the briefs and exhibits. After considering the exhibits admitted into evidence and the parties' briefing, the Court now makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 (a) of the Federal Rules of Civil Procedure. To the extent that a finding of fact constitutes a conclusion of law, the Court adopts it as such, and to the extent that a conclusion of law constitutes a finding of fact, the Court also adopts that as such.

## II. FINDINGS OF FACT

1.

The Plaintiff, ConAgra, is a corporation authorized to do and is doing business in Louisiana.

2.

The Defendant, MEMCO, is a limited liability company authorized to do and is doing business in Louisiana.

3.

ConAgra entered into a Freight Contract with MEMCO for the transportation of the wheat from Henderson, Kentucky to Louisiana.

4.

MEMCO owned and/or operated barge DE8229. On August 2, 2005, barge DE8229 was loaded with a cargo of #2 Soft Red Winter Wheat at Henderson, Kentucky. Pursuant to the

freight contract, MEMCO issued an order bill of lading for the cargo. The bill of lading was consigned to ConAgra and called for destination at Myrtle Grove, Louisiana. The wheat was loaded safely aboard the barge in good order and condition.

5.

While the cargo was in transit, it was sold by ConAgra to Cenex-Harvest States (CHS). The contract of sale between ConAgra and CHS provided for delivery of the wheat "CIF Nola" (New Orleans).

6.

The contract between the parties was subject to the trade rules of National Grain and Feed Association (NGFA). The NGFA barge trade rules required ConAgra, the seller of the grain, to "furnish cargo insurance or cargo insured bill of lading with respect to barges furnished by seller involving CIF or delivered contracts."

7.

On August 22, 2005 the barge reached the agreed upon destination, the grain elevator at the CHS fleet near Port Sulphur, Louisiana.

8.

CHS advised MEMCO that its fleet was full and MEMCO accordingly delivered the barge to the nearby International Marine Terminal(IMT)'s Fleet at Myrtle Grove which would fleet barge DE8229 until CHS and/or ConAgra could receive it.

9.

IMT received barge DE8229 at 0915 hours on August 22, 2005. Both DE8229 and the wheat aboard it were undamaged when delivered to IMT. From August 22, 2005 barge was in the exclusive care, custody and control of IMT.

10.

On August 29, 2005, at approximately 0630 hours, the eye of Hurricane Katrina made landfall near Buras, Louisiana, approximately 15 miles away from the IMT Fleet.

11.

It is presumed, and not otherwise disputed, that at some time during Hurricane Katrina, Barge DE8229 came free from her moorings and was lost. To date, barge DE8229 and her cargo have never been located and are presumed sunk.

12.

ConAgra paid CHS for the value of the wheat after it was lost and took an assignment of CHS's claim.

13.

The DE8229 had 53,498.92 bushels of wheat aboard it when the barge was lost. The fair market value of the wheat was $185,908.74.

### III. CONCLUSIONS OF LAW

1.

The Court's subject matter jurisdiction is grounded on admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2.

Ordinarily, maritime contracts are governed by General Maritime Law. *See Sander v. Alexander Richardson Investments*, 334 F. 3d 712, 715 (8th Cir. 2003). However, in this instance, the contract contains a choice of law provision which provides:

> Governing Law: Binding Effect. This contract shall be governed by
> and construed in accordance with the laws of the State of Missouri

> and shall be binding upon and inureto the benefit of the parties hereto and their successors and assigns, subject to the restrictions of assignability herein contained".

Maritime law will enforce choice of law provisions in maritime contracts. *Trans-Tec Asia v. M/V Harmony Container*, 518 F. 3d 1120, 1126-27 (9th Cir. 2008). Although the parties have chosen Missouri law, the law regarding the construction of the contract is the same under General Maritime Law.

3.

The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. A document is not ambiguous merely because the parties do not agree as to the meaning of its terms. For a contract to be ambiguous, the terms of the contract must be susceptible to two different, reasonable interpretations. *See Whitehill v. Whitehill*, 218 S.W.3d 579 (Mo. App. S.D. 2007). The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary and usual meaning. *See Weathersby v. Conoco Oil Co.* 752 F. 2d 953, 955 (5th Cir. 1984); *Pepsi Midamerica v. Harris*, 232 S. W. 648, 654 (Mo. App. E.D. 2006). A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense.

4.

In a contract of private carriage such as the freight contract at issue in this case, the carrier is liable for any loss or damage to the cargo while it is in the carrier's custody and control. The carrier's liability is as a bailee to exercise reasonable care to protect goods committed to its care. In maritime law, the carrier is also liable for damage due to the unseaworthiness of its vessel.

Of course, the parties to a private contract of carriage are free to adjust the risks of loss or damage to cargo as they see fit. *Complaint and Petition of International Marine Development Corp.*, 451 F.2d 763, 765 (5th Cir. 1971). Clause 14(d) of the contract in this case provides for the risk of loss to shift to the shipper and /or its consignee when it assumes possession of the barge at loading and unloading points. The Freight Contract states as follows:

> 14. LOADING AND UNLOADING OF BARGES...
>
> d. possession of the Barge during Loading/Unloading. Carrier shall deliver a barge to a dock or fleet designated by Shipper or Shipper's consignee for loading or unloading. In the event that the dock or fleet designated by Shipper or Shipper's consignee is unable to accept a barge for any reason at the time tendered by Carrier, Carrier will deliver the barge to the nearest fleet that space is available. Shipper will be responsible for all additional costs associated with moving the barge to that alternate location and utilizing the alternate location. Additionally, the barge will be constructively placed at the alternate location. Upon delivery of a barge, Shipper or Consignee shall be in possession of the barge and responsible for the safety of the barge until redelivered to Carrier. For the purpose of this section, the term "possession" shall mean the time commencing upon Carrier's delivery of a barge for loading or unloading by Shipper or Consignee to any dock or fleet designated by shipper until the barge is removed by Carrier or its agents...

Clause 14(d) clearly and unambiguously sets forth that Conagra and/or CHS "shall be in possession of the barge and responsible for the safety of the barge until redelivered to the Carrier." The Freight Contract further defines the term "possession" as that time beginning when a barge is placed at any dock or fleet designated by the Shipper or Consignee. The language clearly and unambiguously evidences the parties' intent that the risk of loss shifted from MEMCO to Conagra and/or CHS when MEMCO delivered the barge to the IMT fleeting facility. Thus, Conagra or CHS bore the risk of loss on August 29, 2005 when Hurricane Katrina sunk the Barge and damaged the cargo.

Even if MEMCO still retained the risk of loss for the Barge and her cargo, its performance under the Freight Contract is excused by an Act of God. To avail itself of the Act of God defense a party must show that the loss was due to a natural cause without any human intervention and by which no amount of foresight reasonably to have been expected could have prevented. *Skandia Ins. Co., Ltd. v. Star Shipping AS*, 173 F. Supp. 2d 1228, 1240 (S.D. Al. 2001). It is uncontested that Hurricane Katrina was an unexpected and extraordinary force of nature, which is capable of being classified as an Act of God at law. *See Coex Coffee Int'l v. Depuy Storage & Forwarding, LLC*, No. 06-4798, 2008 WL 1884041 (E.D. La. 2008) (holding that Act of God defense applied to loss resulting from Hurricane Katrina).

MEMCO was not negligent in delivering the Barge DE8229 and its contents to the terminal on August 22, 2005, several days before any weather information predicted with reasonable accuracy that Hurricane Katrina would make a direct hit on New Orleans. *Compare In re SS Winged Arrow*, 300 F. Supp. 358 (D.C. La. 1969), *aff'd* 425 F.2d 991 (5th Cir. 1970) (holding that Act of God defense applied to loss of vessel properly moored in Louisiana well before it became clear that Hurricane Betsy would strike the area) *with Crescent Towing & Salvage Co., Inc. v. M/V Chios Beauty*, No. 05-4207, 2008 WL 3850481 (Aug. 14, 2008) (holding that Act of God defense did not apply to loss of vessel when carrier moored barge in New Orleans on August 28, 2005, despite clear and overwhelming meteorological warnings that Hurricane Katrina would make a direct hit on the area within twenty-four hours). In addition, the parties have stipulated that MEMCO took all reasonable precautions in advance of Hurricane Katrina and its actions and/or inactions did not contribute to the loss. Accordingly, MEMCO would be relieved from liability under the Freight Contract and would not be liable for the lost cargo.

## IV. SUMMARY

After considering the evidence and the parties' briefing, the Court finds that the Defendant, AEP MEMCO, bears no liability for the loss of Barge DE8229 or its contents.

New Orleans, Louisiana, this __6th__ day of July, 2009.

_____
UNITED STATES DISTRICT JUDGE